995 So.2d 130 (2007)
Betty THOMAS, Appellant
v.
PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, Appellee.
No. 2005-CC-02184-COA.
Court of Appeals of Mississippi.
June 26, 2007.
Rehearing Denied February 19, 2008.
George S. Luter, Attorney for appellant.
Mary Margaret Bowers, Attorney for appellee.
Before LEE, P.J., BARNES and CARLTON, JJ.
*131 BARNES, J., for the Court.
¶1. Betty Thomas appeals the decision of the Hinds County Circuit Court, First Judicial District, which affirmed the ruling of the Public Employees' Retirement System of Mississippi's (PERS) Board of Trustees denying Betty Thomas, a former state employee, non-work related retirement disability benefits. Thomas applied for disability retirement benefits when chronic pain, headaches, and fatigue due to fibromyalgia rendered her unable to perform her duties as a child support enforcement officer for the Mississippi Department of Human Services. The circuit court found the decision by the PERS Board of Trustees was supported by substantial evidence. On appeal, Thomas argues that there was overwhelming, substantial medical evidence to support her disability claim. We agree and reverse the decision of the circuit court and the PERS Board of Trustees, thereby granting disability benefits to Betty Thomas.

STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶2. Betty Thomas was employed by the Mississippi Department of Human Services as a child support enforcement officer. At the time of her application for PERS disability benefits, she had nine and three-quarters years of service and was forty-nine years old. Thomas's physical activities at work consisted of a sedentary desk job with some standing and pushing and pulling of files. Mentally, her position was highly stressful in that she had to deal with the public.
¶3. Thomas's medical problems pertaining to this case began in August of 2000, when she went to the emergency room in Winona, Mississippi for back pain resulting from sneezing. She complained of pain traveling down her right thigh along with migraine headaches. Thomas then saw a series of doctors who attempted to treat and diagnose her symptoms. Dr. Keith Rushing, her family practitioner, referred her to Jackson orthopedic surgeon, Dr. Patrick Barrett, who found she had "significant back pain" and diagnosed her with right side bursitis and right side lumbar strain. Dr. Barrett then referred Thomas to Dr. Jeffrey T. Summers, a pain specialist, who saw Thomas one time and treated her with a steroid injection and gave her a transcutaneous electrical nerve stimulation (TENS) pain control unit. In January of 2001, Thomas saw Dr. John C. Neill, a Greenwood orthopedic surgeon, who reported that Thomas's cervical spine MRI showed disc degeneration. Dr. Neill recommended spinal fusion in her neck, which was performed by him in February of 2001. Thomas took leave from work for this surgery and also for the death of her brother later that month. In March 2001, after recovering from this surgery, Thomas returned to work for several months, but her health worsened. In April and May of 2001, Thomas complained to her physicians of numbness, headaches, and bodily pain. In her last visit to Dr. Neill on May 11, 2001, however, he did note she had good plate alignment in her spine.
¶4. In October of 2001, Thomas saw Dr. Fred Sandifer, an orthopedic surgeon, for chronic back and hip pains. He stated the source of her constant and chronic pain was unclear and suggested a referral to a rheumatologist based upon the possibility of fibromyalgia. Dr. Rushing, Thomas's primary care physician, referred Thomas to Dr. James Hensarling, who, in a letter to Dr. Rushing dated January 28, 2002, felt Thomas had fibromyalgia in a "predominant pattern." Dr. Hensarling also stated that at this point Thomas "is in a state of chronic pain." He also thought Thomas had "developed secondary depression due to her chronic pain and job status which is *132 stressful," and recommended a psychiatrist. Finally, he advised three months of sick leave from work.
¶5. Dr. Hensarling referred Thomas to Dr. Levitch, a psychiatrist, to help her cope with her pain and depression. Thomas testified that she saw Dr. Levitch every two weeks for depression. He told her she would have a hard time doing her job. Thomas postulates this was because of stress and her memory problems. In April of 2002 the Social Security Administration notified Thomas she was entitled to federal disability benefits from February 26, 2002. Thomas claimed on her PERS disability retirement benefits form, which was filed on May 28, 2002, that February 25, 2002 was her last work day and she was subsequently on leave without pay. A Department of Human Services disability coordinator, Wilhelmina McCullough, wrote on the PERS employer certification of job requirements in May 2002 that Thomas "appears unable to sit for the time needed to perform the essential functions of her job." Additionally, since no accommodations had been offered Thomas, Thomas appeared unable to come to work and perform her duties at that time. In July 2002, on PERS's statement of examining physician form, Dr. Rushing stated Thomas's principal diagnosis was fibromyalgia, her prognosis for recovery was "fair," her estimated time of maximum medical improvement was "indefinite," and "at present patient cannot perform any type of work." On Thomas's private disability insurance form, Dr. Rushing also wrote on the attending physician's statement that she had fibromyalgia even though her diagnostic results were "unremarkable." He stated that mental stress worsened her physical capabilities, and she could not perform work of any kind, although she could do housework. Dr. Levitch, on his PERS's statement of examining physician form dated July of 2002, also stated Thomas suffered from major depression secondary to her medical issues.
¶6. In November of 2002, PERS administered a functional capacity examination ("FCE") on Thomas. The results found Thomas could sit for at least thirty minutes at one time, but was "self-limited by pain." The PERS evaluation recommended that Thomas, while "capable of performing at the sedentary to light level of work with some limitations.... would need to be given occasional rest breaks and alternate sitting and standing." The evaluation concluded that "[i]f these accommodations are not feasible, then the patient would not be able to productively return to work." Also, since "work place stress" was a "significant factor in her inability to return to work, it might also be efficacious for her to be evaluated by a psychiatrist." In November of 2002, Dr. Richard Sharp performed an independent medical examination for Thomas's private disability insurance carrier. It was his opinion that Thomas did have "classic fibromyalgia tender points, as well as associated symptoms, such as fatigue." Thomas's family leave time expired on June 1, 2002, and she was informed by letter in December 2002 that she was no longer employed as of December 31, 2002.
¶7. On February 6, 2003, PERS's executive director wrote Thomas a letter stating there was "insufficient objective evidence" to support her claim that she could not perform her job duties as a child support enforcement officer. Thomas appealed to the PERS Disability Appeals Committee ("Committee") of the Board of Trustees. The Committee held a hearing on March 28, 2003. Appearing at the hearing were Presiding Hearing Officer Sheila Jones, and Drs. Joseph Blackston and Mark Meeks. Thomas appeared pro se. Thomas testified to her numerous physical complaints and stated she left work in January *133 of 2002 because she could no longer cope with the bodily pain, headaches and fatigue. She also had problems dealing with the public and her increasing forgetfulness was making her inefficient. Thomas's husband and a friend testified at the hearing as to her drastic change in health. The Committee, however, while purportedly sympathetic to Thomas's health complaints, denied disability benefits because of lack of "objective medical evidence." On April 22, 2003, the PERS Board of Trustees ("Trustees") adopted the recommendation of the Committee. Thomas appealed to the Hinds County Circuit Court and on October 21, 2005, that court affirmed the order of the Trustees, denying Thomas disability benefits. Thomas then perfected her appeal to this Court.

STANDARD OF REVIEW
¶8. Review of administrative agency decisions by this Court is limited. Rule 5.03 of the Uniform Rules of Circuit and County Court states that an agency's decision will not be disturbed on appeal unless the judgment was: (1) unsupported by substantial evidence, (2) arbitrary and capricious, (3) beyond the power of the agency, or (4) violates the complainant's statutory or constitutional rights. Pub. Employees' Ret. Sys. v. Smith, 880 So.2d 348, 350-51(¶12) (Miss.Ct.App.2004) (citing Pub. Employees' Ret. Sys. v. Dearman, 846 So.2d 1014, 1018(¶13) (Miss. 2003)). This Court may not substitute its judgment for that of the administrative agency, nor may it reweigh the evidence. Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1284(¶15) (Miss.2005). If an agency's decision is not based on substantial evidence, it will be deemed arbitrary and capricious. Pub. Employees' Ret. Sys. v. Allen, 834 So.2d 50, 53(¶10) (Miss.Ct. App.2002). "Substantial evidence" has been defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Pub. Employees Ret. Sys. v. Marquez, 774 So.2d 421, 425(¶14) (Miss.2000). It is "more than a `mere scintilla' or suspicion." Id.

ANALYSIS
¶9. Thomas raises one issue: whether the PERS decision denying her disability benefits is supported by substantial evidence. Thomas argues that there is overwhelming medical evidence to support her disabled status, and thus PERS's denial of benefits is not supported by substantial evidence.
¶10. As PERS notes in its brief, the primary issue before this Court is not whether there is evidence to support Thomas's disability, but whether there is substantial evidence to support PERS's finding she was not disabled. See Doyle v. Pub. Employees' Ret. Sys., 808 So.2d 902, 905(¶8) (Miss.2002) (citing Pub. Employees' Ret. Sys. v. Dishmon, 797 So.2d 888, 891(¶9) (Miss.2001)). Substantial evidence "provides an adequate basis of fact from which the fact in issue can be reasonably inferred." Dishmon, 797 So.2d at 892(¶13). If an administrative agency's decision is unsupported by substantial evidence, it follows that it is arbitrary and capricious. Marquez, 774 So.2d at 430(¶35) (citing Miss. State Dep't of Health v. Natchez Comm. Hosp., 743 So.2d 973, 977(¶13) (Miss.1999)).
¶11. The PERS Medical Board, Disability Appeals Committee, and Board of Trustees had to determine whether Thomas qualified for non-work related disability retirement. For disability retirement determination under Mississippi Code Annotated section 25-11-113(1)(a) (Rev.2006), there are two requirements. First, the "medical board, after an evaluation of medical evidence ... shall certify that the member is mentally or physically incapacitated *134 for the further performance of duty, that such incapacitation is permanent, and that the member should be retired." Miss. Code Ann. § 25-11-113(1)(a) (Rev.2006). Then, the medical board shall apply the statutory definition of "disability" which is "[t]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation." Id. The PERS Medical Board found Thomas had "insufficient objective evidence" to support her claim. The Committee similarly found "[t]here was no objective medical condition to explain her complaints" and denied disability benefits.
¶12. PERS argues on appeal that its decision to deny disability benefits was supported by substantial evidence and thus its decision was not arbitrary and capricious. Additionally, PERS claims it was not required to have Thomas undergo an independent medical exam before denying benefits. Finally, PERS contends it did not ignore the fact Thomas had been approved for Social Security disability benefits.
¶13. The Committee, in making its decision to deny disability benefits to Thomas, purportedly relied upon Thomas's medical records regarding her condition, the FCE performed by PERS, and testimony by PERS reviewing physicians at Thomas's hearing. The Committee noted in its findings that disability benefits are for medical incapacities that are likely to be permanent. After review of Thomas's medical records, the Appeals Committee found no objective medical proof for her variety of vague yet debilitating complaints or objective medical proof that Thomas would be permanently disabled. Further, the Committee opined that "[f]ibromyalgia, if that is what Ms. Thomas has, is treated with exercise and psychiatric therapy and is not a disability in and of itself."
¶14. Thomas argues that her medical records were replete with substantial evidence she had fibromyalgia and could not perform her job. Thomas testified that she had chronic headaches, could not sleep, was exhausted all of the time, had memory problems, and left work because she could not cope with these symptoms, in addition to chronic, constant pain. The record indicates that while the physical requirements of her job as a child enforcement officer were sedentary, she found it mentally stressful. Her employer stated in her PERS disability application that Thomas was unable "to perform essential functions of her job." Thomas's husband and a friend also testified to the "drastic change" in her health. While Thomas's doctors did not immediately relate her symptoms of orthopaedic pain and headaches to fibromyalgia, when symptoms of numbness and pain did not dissipate, and she developed secondary depression, Thomas was ultimately diagnosed with fibromyalgia by rheumatologist Dr. Hensarling. Dr. Rushing, Thomas's primary care doctor, also confirmed that she could not perform her job duties due to her condition.
¶15. On appeal, substantial evidence does not support PERS's decision to deny benefits. PERS presents no contradicting medical evidence in the record that Thomas may not be disabled or have fibromyalgia. PERS merely makes the vague statement that there is a "lack of objective medical evidence" to substantiate Thomas's disability claim. Instead of refuting Thomas's evidence of disability, PERS emphasizes the variety and vagueness of Thomas's physical complaints before she was diagnosed with fibromyalgia, and how her various physicians could find "nothing objective to support the complaints of pain" until Dr. Hensarling diagnosed her *135 with "severe atypical fibromyalgia." PERS notes its reliance on the FCE, which measures an individual's physical capabilities, instead of requesting an independent medical evaluation.[1] The FCE found that Thomas was "very pain focused," but since her job was sedentary, she was capable of performing sedentary work if given occasional rest breaks and allowed to change positions. Yet, "[i]f these accommodations are not feasible," the FCE stated she would not be able to "productively return to work." The report also recommended Thomas see a psychiatrist for work place stress. Yet, this report does not discount Thomas's diagnosis of fibromyalgia, and admits that her return to work would be conditional upon the two factors. The evaluation results, at best, offer inconclusive support of PERS's denial of benefits.
¶16. Due to our standard of review, authority dictates this Court may not reject the only evidence presented, when no contrary view of that evidence is presented, "unless the offered evidence is so absurd or unbelievable that no reasonable person could believe it." Pub. Employees Ret. Sys. v. Thomas, 809 So.2d 690, 696(¶23) (Miss.Ct.App.2001). In Pub. Employees Ret. Sys. v. Waid, 823 So.2d 595 (Miss.Ct.App.2002), a fibromyalgia case discussed by Thomas in her brief, this Court found the decision of the PERS Board of Trustees arbitrary and capricious because the "disability appeals committee made no specific findings of fact," but merely stated "there is not sufficient evidence to support" the claim of disability. Id. at 597(¶7). We find this case analogous even though, as PERS distinguishes in its brief, PERS failed to disclose evidence that two of Waid's physicians found her permanently disabled. In our case, while PERS does present detailed findings, they are basically a summary of Thomas's medical records and do not contradict a finding of disability. Additionally, in Pub. Employees' Ret. Sys. v. Dearman, 846 So.2d 1014, 1018(¶11) (Miss. 2003), another fibromyalgia case, the Mississippi Supreme Court held that "PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation...." See also Pub. Employees' Ret. Sys. v. Marquez, 774 So.2d 421, 428-29(¶29) (Miss.2000) (fibromyalgia case finding evidence supporting PERS's decision to deny benefits not substantial); Cauthen v. Pub. Employees' Ret. Sys., 860 So.2d 829, 833(¶16) (Miss.2003) (chronic fatigue syndrome case finding Dearman and Marquez instructive when no evidence found in record to contradict diagnosis or severity of symptoms).
¶17. After a careful review of the record, we find PERS has not presented substantial evidence in support of its decision. While PERS obviously disagrees with the opinion of Drs. Hensarling and Rushing that Thomas has fibromyalgia and cannot work, we find no conclusive, substantial evidence in the record contradicting or disputing their assertions; nor does PERS provide any evidence to the contrary. Instead, PERS merely rejects the credible evidence presented in support of Thomas's disability. Further, PERS declined to have an independent medical exam performed, which may have provided such contrary evidence. Alternatively, PERS relied on the FCE, which was inconclusive regarding denial of benefits. We find the evidence in the record supports the legitimacy of Thomas's claims of disability and *136 does not evidence that her complaints are exaggerated.
¶18. We find the record devoid of relevant evidence to support PERS's denial of benefits. PERS's rationale of a lack of "objective medical evidence" in support of its denial is insufficient; accordingly, we find PERS's decision arbitrary and capricious, and thereby reverse and remand with instructions to award appropriate disability benefits to Thomas consistent with applicable law.
¶19. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY, FIRST JUDICIAL DISTRICT, IS REVERSED, AND THIS CAUSE IS REMANDED TO THE MISSISSIPPI PUBLIC EMPLOYEES' RETIREMENT SYSTEM WITH INSTRUCTIONS THAT THE APPELLANT, BETTY THOMAS, BE AWARDED DISABILITY BENEFITS AS ALLOWED UNDER APPLICABLE LAW. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE, P.J., IRVING, CHANDLER, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MYERS, P.J., AND GRIFFIS, J. DISSENT WITHOUT SEPARATE WRITTEN OPINION.
NOTES
[1] Under Mississippi Code Ann. Section 25-11-113(e) (Rev.2006), the PERS "medical board may request additional medical evidence and/or other physicians to conduct an evaluation of the member's condition," but it is not required. (Emphasis added.)